## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION



| | |
|---|---|
| STEPHEN SMITH, INDIVIDUALLY, AND AS EXECUTOR OF THE ESTATE OF GEORGIA BUFORD, AND ON BEHALF OF AND FOR THE USE AND BENEFIT OF THE WRONGFUL DEATH BENEFICIARIES OF GEORGIA BUFORD | **PLAINTIFFS** |
| VS. | CAUSE NO.: 3:21cv52-DPJFKB |
| BRANDON NURSING AND REHABILITATION CENTER, LLC, AURORA CARES, LLC, D&N, LLC, DTD HC, LLC, UNIDENTIFIED ENTITIES 1-10, AND JOHN DOES 1-10 (as to the BRANDON NURSING FACILITY) | **DEFENDANTS** |

## COMPLAINT

### JURY TRIAL REQUESTED

COMES NOW, the Plaintiff, Stephen Smith, Individually, and as Executor of the Estate of Georgia Buford, and on behalf of and for the use and benefit of the Wrongful Death Beneficiaries of Georgia Buford, and for his causes of action against Defendants, states:

### I.   PARTIES

1.01   Stephen Smith is a natural son of GEORGIA BUFORD and the Executor of the Estate of GEORGIA BUFORD, deceased, and brings this action individually, and on behalf of the Estate of GEORGIA BUFORD and for the use and benefit of the wrongful death beneficiaries of GEORGIA BUFORD, and pursuant to Mississippi law.

1.02   GEORGIA BUFORD was, at all times material hereto, a resident of Brandon Nursing and Rehabilitation Center, a skilled nursing facility located at 355 Crossgates Blvd, Brandon, MS 39042.

1.03   Defendant, Brandon Nursing and Rehabilitation Center, LLC   (hereinafter

"Brandon Nursing" or "Nursing Home Defendants" or "Brandon Nursing Defendants") is a business operating in the state of Mississippi with its principal place of business located in Rankin County, Mississippi, and that may be served with process to its registered agent, United Corporate Services, Inc., 401 East Capitol Street, 100-M Heritage Building, Jackson, Mississippi 39201, or a location where said agent may be found. Brandon Nursing was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Brandon Nursing.

1.04   Defendant, Aurora Cares, LLC (hereinafter "Aurora" or "Nursing Home Defendants" or "Brandon Nursing Defendants") is a business operating in the state of Mississippi and that may be served with process to its registered agent, United Corporate Services, Inc., 401 East Capitol Street, 100-M Heritage Building, Jackson, Mississippi 39201, or a location where said agent may be found. Aurora was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Brandon Nursing.

1.05   Defendant, D&N, LLC, (hereinafter "D&N" or "Nursing Home Defendants" or "Brandon Nursing Defendants") is a business operating in the state of Mississippi and that may be served with process at 3690 Southwestern Blvd, Orchard Park, NY 14127. D&N was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Brandon Nursing.

1.06   Defendant, DTD HC, LLC (hereinafter "DTD" or "Nursing Home Defendants" or "Brandon Nursing Defendants") is a business operating in the state of Mississippi, and that may be served with process at 3690 Southwestern Blvd, Orchard Park, NY 14127. DTD was, and

remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Brandon Nursing.

1.07   Separate Defendants John Does 1 through 10 are individuals whom Plaintiff is currently unable to identify despite diligent efforts. Said Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of, or in the staffing, supervision, administration, and direction of the care and treatment of, GEORGIA BUFORD, during her residency at Brandon Nursing. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions or others with respect to the care and treatment of GEORGIA BUFORD during her residency at Brandon Nursing.

1.08   Separate Defendants Unidentified Entities 1 through 10 are entities whom Plaintiff is currently unable to identify despite diligent efforts. Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of GEORGIA BUFORD during her residency at Brandon Nursing. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of GEORGIA BUFORD during her residency at Brandon Nursing.

1.09   At all times material hereto, Defendants owned, operated and/or controlled Brandon Nursing Center. The actions of each of Brandon Nursing Defendants' servants, agents and employees as set forth herein, are imputed to the Brandon Nursing Defendants, John Does 1 through 10, and Unidentified Entities 1 through 10.

## II.   JURISDICTION AND VENUE

2.01     Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-1.09 as if set forth herein.

2.02     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 where the amount in controversy exceeds the sum of $75,000 and where complete diversity exists.

2.03     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

### III.     DEFENDANTS' JOINT VENTURE

3.01     Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-2.03 as if set forth herein.

3.02     Brandon Nursing, Aurora, D&N, and DTD, (herein collectively referred to as the "Brandon Nursing Defendants") were engaged in a joint enterprise, in that:

    a.    Brandon Nursing Defendants had a mutual understanding for the common purpose of operating Brandon Nursing; and

    b.    Brandon Nursing Defendants each had a right to a voice in the direction and control of the means to carry out this common purpose.

3.03     There has been a close relationship between Brandon Nursing Defendants at all times relevant.

3.04     As a consequence of the joint enterprise, Brandon Nursing Defendants owed a joint duty to Ms. BUFORD to use reasonable care for her safety while upon their premises and under their care and supervision at Brandon Nursing.

3.05     As a consequence of the joint enterprise, each Defendant's wrongful acts are imputed to and constitute the acts of the other Defendants and the failure of the Defendants shall be aggregated.

## IV.   AGENCY

4.01   Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-3.05 as if set forth herein.

4.02   All actions of the staff and other employees and agents of Defendants who were responsible for providing care and treatment to Ms. BUFORD while she was a resident at Brandon Nursing, alleged herein, were performed within the scope of their employment or agency with Defendants.

4.03   For that reason, Defendants are vicariously liable for the actions of its nursing staff and other employees and agents in relation to the care of, or failure to care for, Ms. BUFORD.

## V.   FACTUAL SUMMARY

5.01   Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-4.03 as if set forth herein.

5.02   Ms. BUFORD began her residency with the Brandon Nursing Defendants on or around April 11, 2019. On April 6, 2020, Ms. BUFORD died as a result of the injuries she suffered at Defendants' facility.

5.03   That throughout Ms. BUFORD's residency, the Facility, including any of its staff or other personnel, failed to possess and exercise that degree of care, diligence, and skill as it ordinarily possessed and exercised by minimally competent and reasonably diligent, skillful, careful and prudent nursing homes, and their staff or other personnel.

5.04   Ms. BUFORD suffered falls, accidents, incidents, injuries, abuse and neglect, unexplained injuries, had an unkept appearance, suffered disfigurement, poor hygiene, mental decline, and she suffered other injuries, and ultimately death, as a result of the improper care and

5

treatment provided to her by the Facility and/or its staff or other personnel throughout her residency with the Facility.

5.05   Ms. BUFORD suffered many incidents, abuse and neglect, improper care, and injuries, including but not limited to the following:

> The Facility represented that it could care for a patient like Ms. BUFORD but they consistently failed in their assessment of Ms. BUFORD and her risk for falls, and failed to adequately intervene to decrease the risk of Ms. BUFORD falling and suffering injury, including, but not limited to, a right leg fracture.

- That in May of 2019, Ms. BUFORD suffered a right leg fracture as a result of the Facility's negligent and reckless actions. The Facility staff failed to properly transfer Ms. BUFORD resulting in an incident where facility staff dropped Ms. BUFORD, fell on top of her, and also stepped on her leg while attempting to stand up from the floor. Ms. BUFORD'S clinical condition declined as a result of his fall. The nursing home failed to take proper interventions relating to Ms. BUFORD being at risk for falls and failed to properly monitor and supervise Ms. BUFORD in light of her clinical condition. No interventions were taken, and if taken, were inappropriate.

- After Ms. BUFORD's right leg fracture in May of 2019, her clinical condition began to deteriorate. Ms. BUFORD died on April 6, 2020 as a result of the acts and/or omissions of Defendants.

- Ms. BUFORD required hospitalizations as a result of the negligence and inaction of the Facility.

- The charting was infrequent, had gaps, and did not meet the standard of care.

- Ms. BUFORD received poor personal care while she was a resident of the Facility.

5.06   The conditions reflected herein are readily apparent based on a review of Ms. BUFORD's chart. As a result of the individual and/or combined negligence, gross negligence, reckless, and willful/wanton actions of the Defendants and/or their staff or other personnel, Ms. BUFORD suffered extensive injuries and damages, including loss of her dignity, great pain and suffering, disfigurement, right leg fracture, mental anguish, and ultimately death. The Facility and/or their staff or other personnel failed to meet the appropriate standard of care with regard to the care and treatment provided to Ms. BUFORD throughout her residency with the Facility.

5.07    Defendants were well aware of Ms. BUFORD's medical condition and the care that she required when they represented that they could adequately care for her needs.

5.08    At all times material to this lawsuit, Defendants held themselves out as being:

    a.   Skilled in the performance of nursing, rehabilitative and other medical support services;

    b.   Properly staffed, supervised, and equipped to meet the total needs of their nursing home residents;

    c.   Able to specifically meet the total nursing home, medical, and physical therapy needs of GEORGIA BUFORD and other residents like her; and

    d.   Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes, nursing home licensees and nursing home administrators.

5.09    The Defendants exercised substantial control over significant aspects of the operation and management of Brandon Nursing during Ms. BUFORD's residency period, including but not limited to the creation, setting, funding and/or implementation of budgets; the hiring and training of staff; the monitoring of resident acuity levels and staffing sufficiency to meet each resident's needs; control over resident admissions and discharge to and from the facility; and the creation and enforcement of written policies and procedures pertaining to the rules that provide for the safety and well-being of residents.

5.10    Each of these managerial and operational functions had a direct impact on the quality of care delivered to Ms. BUFORD and other residents at Brandon Nursing and were taken in furtherance of an operation and managerial objective over Brandon Nursing.

5.11    Brandon Nursing Defendants substantially derive their revenue and profits from the receipt of taxpayer dollars through federally and state funded Medicare and Medicaid programs.

5.12    Residents with higher acuity levels, i.e., a greater number and degree of illnesses,

place higher demands for care and services on the nursing home and its staff.

5.13    The rate at which Brandon Nursing Defendants are reimbursed by Medicare and Medicaid for the delivery of nursing home care and services, and accordingly the amount of their ultimate revenue and profits, are based upon the acuity level of the residents confined to their facilities.

5.14    The daily reimbursement rate varies based on the level of nursing care and number of therapy minutes provided to the resident. Acuity levels are determined by the resident's Resource Utilization Group or "RUG" score.

5.15    This creates a financial incentive on nursing home corporations, including Brandon Nursing Defendants, to admit and retain residents with greater mental, physical and psychosocial needs.

5.16    The Medicare Cost Report submitted by Brandon Nursing for the year 2019 shows that 80.58% of all residents residing in the facility had an "Ultra High" or "Very High" RUG score.

5.17    Medicare and Medicaid expect and presume that the nursing home, and Brandon Nursing Defendants, will actually use the additional funds received for higher acuity level residents to meet those residents' needs, primarily through the additional employment of staff members to deliver the increased care and services.

5.18    Despite receiving additional funds from Medicare and Medicaid based upon the resident acuity levels reported to Medicare for Brandon Nursing prior to, and during, Ms. BUFORD's residency period, Defendants failed to ensure, through their operational, budgetary, consultation and managerial decisions and actions, that Brandon Nursing was sufficiently staffed to meet the individual needs of Ms. BUFORD during her residency period.

5.19   This lack of sufficient staff directly resulted in Ms. BUFORD not receiving the very basic and necessary services to prevent, among other things, neglect and abuse leading to an incident where Ms. Buford was dropped, subsequent right leg fracture, and ultimately death.

5.20   While holding Brandon Nursing out to Ms. BUFORD and other members of the public as providing excellent care, Defendants, as reflected on the Medicare and Medicaid Cost Reports – signed under penalty of perjury and filed with state and federal governments – extracted considerable profit through the management and operation of Brandon Nursing by paying management, administration and consulting fees, as well as other "costs," to the Defendants named herein and other related entities from funds which should have been utilized to hire, train and retain sufficient numbers of qualified staff to meet the needs of Ms. BUFORD.

5.21   Brandon Nursing Defendants chose to pay exorbitant amounts of money to related entities rather than allocate funds to adequately staff Brandon Nursing to meet the needs of its residents, including GEORGIA BUFORD.  This conscious decision to understaff Brandon Nursing resulted in savings to Brandon Nursing Defendants in 2019.  The understaffing was not isolated to 2019, but was a continuous pattern of Brandon Nursing Defendants in order to maximize profits.

5.22   The Defendants failed to discharge their obligations of care to GEORGIA BUFORD.  As a consequence thereof, GEORGIA BUFORD suffered catastrophic injuries, disfigurement, extreme pain and suffering, mental anguish, and death.  The scope and severity of the recurrent wrongs inflicted upon GEORGIA BUFORD while under the care of the facility accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process and resulted in physical and emotional trauma as described above.

5.23   The wrongs complained of herein were of a continuing nature, and occurred

throughout GEORGIA BUFORD's stay at Defendants' facility.

5.24   Plaintiff alleges that on all of the occasions complained of herein, GEORGIA BUFORD was under the care, supervision, and treatment of the agents and/or employees of Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

5.25   Defendants had vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of GEORGIA BUFORD.

5.26   Defendants have joint and several liability for the actions complained of herein 3because they consciously and deliberately pursued a common plan or design to commit the tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE: NEGLIGENCE AGAINST THE BRANDON NURSING DEFENDANTS, JOHN DOES 1-10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.27   Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-5.26 as if set forth herein.

5.28   Defendants owed a duty to residents, including GEORGIA BUFORD, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

5.29   Defendants owed a duty to residents, including GEORGIA BUFORD, to exercise reasonable care in providing care and services in a safe and beneficial manner.

5.30   Defendants owed a duty to GEORGIA BUFORD to use reasonable care to protect her from unreasonable risk of harm.

5.31   At all times relevant herein, MS. BUFORD was in a defenseless and dependent

condition. As a result of her defenseless and dependent condition, Ms. BUFORD relied upon Defendants to provide for her safety, protection, care and treatment.

5.32 At all times relevant herein, Defendants had a duty to act in accordance with the standards of care required of those who own, operate, manage, maintain, and/or control a skilled nursing facility.

5.33 This duty required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of, residents such as Ms. BUFORD.

5.34 This duty required Defendants to have sufficient and qualified staff to ensure the proper care for, and treatment of, residents such as Ms. BUFORD.

5.35 This duty required Defendants to ensure that its agents, servants and/or employees were properly educated and trained with regard to the care for, and treatment of, residents such as Ms. BUFORD.

5.36 The Defendants and their employees/agents breached their duty to use reasonable care in the performance of nonmedical, administrative, ministerial or routine care, for GEORGIA BUFORD's safety.

5.37 Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of GEORGIA BUFORD.

5.38 As a direct and proximate result of the negligence of Defendants as set out above, GEORGIA BUFORD suffered injuries, as set forth herein all of which required hospitalization and medical treatment, and all of which required Ms. BUFORD to incur significant hospital and medical expenses.

5.39 WHEREFORE, based on such conduct of Separate Defendants as set forth above,

Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT TWO: MEDICAL MALPRACTICE AGAINST THE BRANDON NURSING DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.40   Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01-5.39, as if fully set forth herein.

5.41   Separate Defendants owed a duty to residents, including GEORGIA BUFORD, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

5.42   Separate Defendants owed a duty to residents, including GEORGIA BUFORD, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

5.43   Separate Defendants owed a duty to assist all residents, including GEORGIA BUFORD, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

5.44   Separate Defendants failed to meet the standard of care and violated their duty of care to GEORGIA BUFORD through mistreatment, abuse, and neglect. The medical negligence of these Defendants includes, but is not limited to, the following acts and omissions:

    a.    LEGAL COMPLIANCE – Complying with applicable federal regulations, state statutes and rules, and professional standards of care;

    b.    WELL-BEING AND QUALITY OF LIFE – Providing goods and services for

     GEORGIA BUFORD necessary to avoid physical harm and mental anguish; caring for GEORGIA BUFORD in a manner and in an environment that promoted maintenance or enhancement of her quality of life; and providing the necessary care and services for GEORGIA BUFORD to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

  c. ASSESSMENT – Conducting a comprehensive, accurate, standardized reproducible assessment of GEORGIA BUFORD's functional capacity;

  d. CARE PLANNING – Developing and implementing a comprehensive, individualized care plan for GEORGIA BUFORD that included measurable objectives and timetables to meet her medical, nursing, mental, and psychosocial needs;

  e. ACCIDENTS – Ensuring that GEORGIA BUFORD's environment remained as free from accident hazards and that he received adequate supervision and assistance devices to prevent accidents;

  f. NURSING INTERVENTIONS – Developing and implementing new nursing interventions when Defendants' Care Plan for GEORGIA BUFORD no longer met her needs;

  g. SUFFICIENT STAFF – Having sufficient nursing staff to provide nursing and related services to allow GEORGIA BUFORD to attain or maintain the highest practicable physical, mental, and psychosocial well-being in accordance with her resident assessments and individual plans of care;

  h. COMPETENT STAFF – Ensuring that direct care staff were competent in the skills and techniques necessary to care for GEORGIA BUFORD's needs, and were able to perform their assigned duties;

  i. CLINICAL RECORDS – Maintaining clinical records for GEORGIA BUFORD in accordance with accepted professional standards and accepted standards of professional nursing practice; and

  j. OTHER FAILURES – which will be shown throughout litigation.

  5.45 A reasonably prudent nursing home operating under the same or similar conditions, would not have failed to provide the care listed in the above paragraphs. Each of the foregoing acts of medical negligence on the part of Defendants was a proximate cause of GEORGIA BUFORD's injuries and death. GEORGIA BUFORD's injuries and death were foreseeable

to these Defendants.

5.46 Defendants' conduct in breaching the duties owed to GEORGIA BUFORD was grossly negligent, willful, wanton, malicious and reckless.

5.47 As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, GEORGIA BUFORD suffered injuries and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment. As a result, Ms. BUFORD incurred significant medical expenses.

5.48 WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

**COUNT THREE: MALICE, AND/OR GROSS NEGLIGENCE WHICH EVIDENCES A WILLFUL, WANTON, OR RECKLESS DISREGARD FOR THE SAFETY OF GEORGIA BUFORD AGAINST BRANDON NURSING DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10**

5.49 Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01- 5.48, as if fully set forth herein.

5.50 The longevity, scope and severity of Defendants' failures and actions constitute malice, and/or gross negligence that evidences a willful, wanton or reckless disregard for the safety of others, including GEORGIA BUFORD. Specifically, such conduct was undertaken by Defendants without regard to the health and safety consequences to those residents, such as GEORGIA BUFORD, entrusted to their care. Moreover, such conduct evidences little regard for their duties of care, good faith, and fidelity owed to Ms. BUFORD.

5.51 The malice, and/or gross negligence which evidences a willful, wanton, or

reckless disregard for the safety of others, including GEORGIA BUFORD, includes, but is not limited to, acts and omissions as alleged in the above paragraphs, as well as the following:

    a.    LEGAL COMPLIANCE – Complying with applicable federal regulations, state statutes and rules, and professional standards of care;

    b.    WELL-BEING AND QUALITY OF LIFE – Providing goods and services for GEORGIA BUFORD necessary to avoid physical harm and mental anguish; caring for GEORGIA BUFORD in a manner and in an environment that promoted maintenance or enhancement of her quality of life; and providing the necessary care and services for GEORGIA BUFORD to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

    c.    ASSESSMENT – Conducting a comprehensive, accurate, standardized reproducible assessment of GEORGIA BUFORD's functional capacity;

    d.    CARE PLANNING – Developing and implementing a comprehensive, individualized care plan for GEORGIA BUFORD that included measurable objectives and timetables to meet her medical, nursing, mental, and psychosocial needs;

    e.    ACCIDENTS – Ensuring that GEORGIA BUFORD's environment remained as free from accident hazards and that she received adequate supervision and assistance devices to prevent accidents;

    f.    NURSING INTERVENTIONS – Developing and implementing new nursing interventions when Defendants' Care Plan for GEORGIA BUFORD no longer met her needs;

    g.    SUFFICIENT STAFF – Having sufficient nursing staff to provide nursing and related services to allow GEORGIA BUFORD to attain or maintain the highest practicable physical, mental, and psychosocial well-being in accordance with her resident assessments and individual plans of care;

    h.    COMPETENT STAFF – Ensuring that direct care staff were competent in the skills and techniques necessary to care for GEORGIA BUFORD's needs, and were able to perform their assigned duties;

    i.    CLINICAL RECORDS – Maintaining clinical records for GEORGIA BUFORD in accordance with accepted professional standards and accepted standards of professional nursing practice; and

    j.    OTHER FAILURES – which will be shown throughout litigation.

5.52   As a direct and proximate result of the above cited malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including GEORGIA BUFORD, she suffered injuries as set herein, all of which required Ms. BUFORD to incur significant medical expenses as well as suffer extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which resulted in death.

5.53   WHEREFORE, based on such conduct of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damage against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, and humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT FOUR: STATUTORY SURVIVAL CLAIM AGAINST THE BRANDON NURSING DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.54   Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 5.53, as if fully set forth herein.

5.55   As a direct and proximate result of the negligence, malice, and/or gross negligence that evidenced and willful, wanton or reckless disregard for the safety of others, including GEORGIA BUFORD, MS. BUFORD suffered injuries and death as set forth herein, all of which caused physical pain and suffering, mental anguish, humiliation, embarrassment, disfigurement, fright, and emotional distress. As a result, GEORGIA BUFORD incurred significant hospital and medical expenses.

5.56   As a direct, natural and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others,

GEORGIA BUFORD died on April 6, 2020, thereby incurring funeral, burial, and other related expenses.

5.57    WHEREFORE, based on and arising out of the conduct of Separate Defendants as set out above, Plaintiff asserted a claim for judgment for compensatory and punitive damages for GEORGIA BUFORD's death, including, but not limited to medical expenses, costs of administration of GEORGIA BUFORD's estate, and other related expenses incurred as a result of Separate Defendant's wrongful acts and omissions, as well as damages for physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT FIVE: STATUTORY WRONGFUL DEATH CLAIM AGAINST BRANDON NURSING DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.58    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 5.57, as if fully set forth herein.

5.59    As a direct and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including GEORGIA BUFORD, Defendants caused the death of GEORGIA BUFORD.

5.60    As a direct, natural and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, GEORGIA BUFORD suffered extreme pain, suffering, mental anguish, embarrassment, disfigurement, and fright, all of which required hospitalization and medical treatment. GEORGIA BUFORD died on April 6, 2020, thereby incurring funeral, burial and other related expenses.

5.61    As a result of the death of GEORGIA BUFORD, the wrongful death beneficiaries suffered loss of consortium, attention, guidance, care, protection, training, companionship,

compassion, affection, and love.

5.62   WHEREFORE, based on such conduct of Separate Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants including but not limited to GEORGIA BUFORD's physical pain and suffering, mental anguish, disfigurement, and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Additionally, based on such conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants based on the damages sustained by the wrongful death beneficiaries as a result of the loss of a personal relationship with GEORGIA BUFORD including but not limited to loss of support, companionship, consortium, attention, guidance, care, protection, training, compassion, affection, and love, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled.

## PRAYER FOR RELIEF

Pursuant to Mississippi Rules of Civil Procedure, Plaintiff demands that all issues of fact in the case be tried to a jury.

WHEREFORE, the Plaintiff, Stephen Smith, Individually, and as Executor of the Estate of GEORGIA BUFORD and for the use and benefit of the wrongful death beneficiaries of GEORGIA BUFORD, and for his causes of action, prays for judgment against all Defendants, as follows:

1. For damages to be determined by the jury, in an amount exceeding the minimum jurisdictional amount of this Court, and adequate to compensate Plaintiff for all the injuries and damages sustained;

2. For all general and special damages caused by the alleged conduct of Defendants;

3. For the costs of litigating this case;

4.   For punitive damages sufficient to punish Defendants for their egregious conduct and to deter all Defendants from repeating such atrocities; and

5.   For all relief to which Plaintiff is entitled by Mississippi law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, sues and demands judgment of and from the Defendants, for all damages allowed under law including compensatory damages and punitive damages in an amount to be determined by the jury, and for any such other relief which the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the 22nd day of January, 2021.

PLAINTIFF, STEPHEN SMITH,
INDIVIDUALLY, AND AS EXECUTOR OF THE
ESTATE OF GEORGIA BUFORD, AND ON
BEHALF OF AND FOR THE USE AND
BENEFIT OF THE WRONGFUL DEATH
BENEFICIARIES OF GEORGIA BUFORD

BY: _____
R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB #102345)
COURTNEY M. WILLIAMS (MSB #102347)
MATT NEWMAN (MSB# 103654)
WILLIAMS NEWMAN WILLIAMS, PLLC
129 B. SOUTH PRESIDENT ST. (39201)
Post Office Box 23785
Jackson, Mississippi  39225
Tel:   (601) 949-5080
Fax:   (601) 949-5538
Email: paul@wnwlegal.com
       courtney@wnwlegal.com
       matt@wnwlegal.com